IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No.: 4:11-cr-00540-RBH-1 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMES ELBERT DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is now before the court with James Elbert Daniels' ("Defendant") [Docket Entry 35] Motion to Suppress filed on July 8, 2011. The Government opposed the Motion to Suppress on July 18, 2011. *See* Resp. in Opp. [Docket Entry 36]. The court held a hearing on the motion on July 25, 2011.

## **Factual Background**[1]

On or about September 27, 2009, around 9:45 p.m., the Myrtle Beach Police Department ("MBPD") dispatcher received an anonymous phone-call and relayed the information received to officers on patrol. According to dispatch notes, the caller reported that several black males in the Bermuda Sands Hotel parking lot, 104 North Ocean Boulevard, were heard screaming that they were going to shoot somebody if they did not get their money when they arrived at the Sea Cruz Motel, 401 North Ocean Boulevard. Dispatch further notified officers that the individuals in question had left the Bermuda Sands Hotel and were headed north on Ocean Boulevard in a silver, late-1990's four-door Buick, which was missing the back, driver's-side hubcap.

Investigator Jackson was the first MBPD officer to respond to the scene. As he approached on North Ocean Boulevard, Investigator Jackson observed a four-door, gold or metallic-colored

---

[1] The only evidence presented at the hearing was the testimony of Investigator Jackson ("Jackson"), MBPD, who conducted the stop in question, and a video of the stop.

Oldsmobile missing at least one hubcap. The vehicle was occupied by three black males and was exiting the Sea Cruz Motel. Investigator Jackson stopped the Oldsmobile on 308 North Kings Highway, after waiting for backup to arrive. The officers asked the driver to step-out of the vehicle, and, upon questioning, the driver indicated that he had come from the Bermuda Sands Hotel. Officers then instructed Defendant, who was riding in the front passenger seat, to exit the vehicle. As the officers conducted a pat-down of Defendant, a loaded handgun fell out his pants and onto the ground. The officers immediately placed both Defendant and the driver in handcuffs, and eventually handcuffed the third passenger after removing him from the vehicle.

## Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. This protection against unreasonable seizures extends to investigatory stops made by the police. An officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "When police rely on an anonymous tip to support reasonable suspicion, the tip 'must be accompanied by some corroborative elements that establish the tip's reliability.'" *United States v. Reaves*, 512 F.3d 123, 126 (4th Cir. 2008) (quoting *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004)). In other words, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (internal quotations and citations omitted). "[A]n anonymous call is more likely to be reliable if it provides substantial detail about the individuals and the alleged criminal activity

it describes; if it discloses the basis of the informant's knowledge; and, especially, if the informant indicates that her report is based on her contemporaneous personal observation of the call's subject." *United States v. Elston*, 479 F.3d 314, 318 (4th Cir. 2007). "[The court] consider[s] the totality of the circumstances in assessing the reliability of an anonymous tip." *Reaves*, 512 F.3d at 126 (citing *Perkins*, 363 F.3d at 321, 324).

In this case, Defendant contends that the anonymous tip relayed to MBPD officers through the 911 dispatcher failed to provide reasonable suspicion to justify the *Terry* stop of Defendant's vehicle. Defendant relies on the Supreme Court case of *Florida v. J.L.*, 529 U.S. 266 (2000). In *J.L.*, the Supreme Court concluded that an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" failed to contain sufficient indicia of reliability to supply the officer with reasonable suspicion. *Id.* at 268. The Supreme Court found that "[t]he anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* at 271. The Court further noted that "[a]ll the police had to go on in [*J.L.*] was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.*

The Government argues that the case *sub judice* is distinguishable from *J.L.*, and that the facts of the present case are actually more similar to those presented in *United States v. Elston*, 479 F.3d 314 (4th Cir. 2007). In *Elston*, a woman called the police department to report a drunk driver, but she asked to remain anonymous. *Id.* at 315. The caller further advised the dispatcher that Elston, the subject of the call, was highly intoxicated, leaving her home, and headed towards "either a nearby Family Dollar store or his own home." *Id.* The caller provided a detailed description of Elston's

vehicle, as well as information about what Elston was wearing. *Id.* Finally, the caller indicated that Elston had a firearm in his truck and had threatened to use it. *Id.* Elston, citing *J.L.*, argued that the anonymous tip did not provide sufficient reasonable suspicion for the stop of his vehicle. The Fourth Circuit Court of Appeals disagreed, ultimately affirming the district court's denial of the motion to suppress. Specifically, the Fourth Circuit found that "[i]n sharp contrast to the 'bare-boned' tips considered in *J.L.*," the anonymous tip in *Elston* "provided a wealth of detail about Elston's appearance, vehicle, weapon, behavior, and state of mind." *Id.* at 318. In addition, the tip indicated that "Elston had just departed the Lansdowne housing project after uttering a threat to shoot someone, [which] indicat[ed] that the basis of [the tip] was [the caller's] contemporaneous personal observation." *Id.* Finally and significantly, the Fourth Circuit noted that the caller "was reporting an imminent threat to public safety–an individual who had expressly threatened to shoot someone in the very near future," and found that "[t]he imminent threat faced by these officers carrie[d] substantial weight in assessing the reasonableness of their actions." *Id.* at 319.

Here, while the court considers this a "close case,"[2] the court concludes that under the totality of the circumstances the MBPD officers possessed sufficient information to justify a *Terry* stop of the vehicle in which Defendant was a passenger. The anonymous caller in this case provided detailed information regarding Defendant and the vehicle in which he was traveling, most of which was specifically corroborated by the MBPD prior to the stop in question. Additionally, as in *Elston*, the anonymous caller's tip appears to have been based on the caller's "contemporaneous personal

---

[2] *See J.L.*, 529 U.S. at 271 (noting that *Alabama v. White*, 496 U.S. 325 (1990) was a "close case" where "the police received an anonymous tip asserting that a woman was carrying cocaine and predicting that she would leave an apartment building at a specified time, get into a car matching a particular description, and drive to a named motel"; ultimately found reasonable suspicion existed).

4

observations" which enhances its reliability.[3] *Elston*, 479 F.3d at 318.  Specifically, the caller indicated that there were several black males in the vehicle in question and further provided the following description of the vehicle: (1) four-door, (2) silver, (3) late-1990's, (4) Buick, (5) missing its back, driver's side hubcap.  Upon arrival on the scene, Investigator Jackson observed three black males inside a four-door, gold or metallic-colored 1990's model Oldsmobile, that was missing at least one hubcap.  At the hearing, Investigator Jackson testified[4] that the car's missing hubcap is what first drew his attention.  He also testified that he was certain the color of the car was metallic, which he opined was similar to the anonymous caller's description.[5]  Accordingly, the court finds that the anonymous caller provided, and the MBPD corroborated, certain detailed information regarding Defendant and the vehicle in which he was a passenger.

Moreover, the anonymous caller indicated that Defendant and the other individuals had left the Bermuda Sands Hotel and were headed to the Sea Cruz Motel.  Based on this information, Investigator Jackson responded to the Sea Cruz Motel, and upon arrival, the vehicle containing Defendant was seen exiting the Sea Cruz Motel parking lot.  This sort of "predictive information," found lacking by the Supreme Court in *J.L.*, enhances the anonymous caller's credibility and reliability.  In our case, not only did the anonymous caller provide this "predictive information" regarding Defendant's future location, but the accurate tip was corroborated upon Investigator

---

[3] The caller stated that he or she overheard the individuals in questions screaming in the parking lot of the Bermuda Sands Hotel that they were going to shoot somebody if they did not get their money when they arrived at the Sea Cruz Motel, and the caller further indicated that the individuals had left that parking lot approximately five minutes prior to his or her call.  Accordingly, it appears that the anonymous caller personally witnessed and/or heard the individuals in question while the individuals were located in the Bermuda Sands Hotel parking lot.

[4] The court finds that Investigator Jackson's testimony was credible.

[5] The court viewed the videotape of the stop and notes that the vehicle looked somewhat silver on the tape.

Jackson's arrival at the Sea Cruz Motel.

Finally, and most significantly, the court notes that the anonymous tip in this case indicated that the individuals in question had threatened to shoot somebody if they did not get their money. The Fourth Circuit, in *Elston*, noted the "significance" of a similar threat–"an individual who had expressly threatened to shoot someone in the very near future." *Elston*, 479 F.3d at 319. Specifically, the Fourth Circuit found that the anonymous caller was "reporting an imminent threat to public safety," and further that "[t]he imminent threat faced by th[o]se officers carrie[d] substantial weight in assessing the reasonableness of their actions." *Id.* Even the Supreme Court in *J.L.*, recognized that there may be "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." *J.L.*, 529 U.S. at 273. In our case, Investigator Jackson testified that the threat of a shooting was the most concerning information relayed to him by the MBPD dispatcher. As a matter of fact, Investigator Jackson indicated that the dispatch call was actually coded a high-priority call due to the threatened use of a firearm. The court gives this "imminent threat to public safety" great weight in determining the reasonableness of the MBPD's stop of Defendant's vehicle.

Based on the foregoing, the court concludes that this case is much like *Elston*–the anonymous tip "bore strong indicia of reliability and alerted the police officers to a serious and imminent danger." *Elston*, 479 F.3d at 319. Reviewing the totality of the circumstances, the court concludes that the anonymous tip, after suitable corroboration, exhibited sufficient indicia of reliability to provide the MBPD officers with reasonable suspicion of criminal activity to conduct the *Terry* stop of Defendant's vehicle. This coupled with the high-priority code due to a threat to shoot someone supported the reasonableness of the officers' actions. Accordingly, it was reasonable for the MBPD

officers to stop Defendant's vehicle and investigate the situation further.

## Conclusion

For the reasons stated above, Defendant's [Docket Entry 35] Motion to Suppress is **DENIED**.

    **IT IS SO ORDERED.**

    s/R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 26, 2011